Argued March 5; affirmed March 18, 1930

NEPPACH v. MITCHELL

(285 P. 1109)

*Thomas Mannix* of Portland for appellant.
*E. Earl Feike* of Portland for respondent.

ROSSMAN, J. ■ This is an action of replevin; the property sought is an automobile. Some months prior to the institution of this action the plaintiff installed one H. McDonald as the occupant of the building at No. 61 Grand avenue north, Portland. McDonald thereupon conducted in those premises an automobile sales business under the name of H. McDonald & Company, which name he had printed upon the building. The plaintiff testified that he financed McDonald in the purchase of his automobiles and that at times he paid McDonald's rent when the latter was unable to do so. A part of the equipment of the place was a display room where cars offered for sale were placed for the inspection of prospective buyers. Neppach testified that at about the time when the incident occurred, which resulted in the filing of this action, about thirty-four cars comprised the stock, and that all of them were owned by himself. August 8th the defendant visited this establishment and seeing in the display room the car in question, became interested in it. A salesman named Baer waited upon her and the following day

demonstrated the car; the next morning she made the purchase. The price of the car was $756; at that time she paid $606 to McDonald and also signed her promissory note for $150, payable thirty days hence; $756 was the market price of that type of car. McDonald had purchased this car from the manufacturer; upon its arrival in Portland, with sight draft attached, the plaintiff provided the purchase money so that McDonald could obtain possession. Immediately thereafter the latter executed and delivered to the plaintiff a bill of sale for the car. It was this practice, followed in other instances as well, which placed the title to McDonald's stock of cars in Neppach. The latter, however, permitted McDonald to register ownership of the cars in McDonald's name in the secretary of state's office under the provisions of 1927 Session Laws, chapter 364, §§ 6 and 6a. When the defendant paid the above sum of $606, a clerk in McDonald's employ prepared the necessary application for the motor vehicle license and forwarded it to Salem; when the final payment of $150 was made the defendant was given a bill of sale to the car and eventually the secretary of state sent to her a certificate of ownership.

The plaintiff does not dispute the testimony of the defendant and her husband that they had no knowledge of his interest in this car and imputes to them no bad faith. He testified, however, that he gave permission to no one to sell this car, but qualified this statement by later adding, "No car should be sold before they had paid me in full for what I had advanced, with a percentage for financing them." He admitted that "sometimes" this rule was not followed. The plaintiff testified that he had advised the salesmen, employed by McDonald, of his ownership of these automobiles and that he had instructed them not to sell any

of the cars; in fact he testified, "it was common talk around there" that he was the owner of the cars and that "everybody knew it." These positive general statements imputing knowledge to all he soon qualified by adding that he did not make known his interest in this general manner until the time when he obtained the appointment of a receiver for McDonald's business; we shall discuss the receivership later.

The plaintiff admitted that prior to this alleged general dissemination of notice the only ones who were aware of his interest were, "well, I think my bookkeepers down there"; further inquiries developed the fact that "the bookkeepers" was one Arthur Jackson, who was not employed upon these premises. Jackson was not called as a witness. Neppach thought that possibly one Miss Bodding knew "about such an arrangement or should have known." She testified, "I just learned from the sales department that Mr. Stopper had made out a bill of sale to Mr. Neppach on these cars." Apparently she had acquired this information shortly before the purchase made by the defendant; seemingly this was the only intimation that had come to her that McDonald was not the owner of the stock of cars. Baer, the salesman, and one Lyons, the sales manager, stated positively that they were unaware of Neppach's ownership of the cars. These two, together with Miss Bodding, were the only employes of McDonald who testified; the latter did not attend the trial. All three declared that no one ever informed them that these cars were not for sale. Upon the other hand Baer testified: "We were urged to get out and get the business"; Lyons testified: "I thought everything there was for sale." All the witnesses testified that the doors of the establishment were open to the public and that nothing

about the place supplied any information that McDonald was not the owner of the cars and the establishment. Apparently Neppach visited the place from time to time but did not mention his ownership of the cars on these visits. The cars were brought to the place by McDonald.

August 8, 1928, Neppach filed a suit for the purpose of having a receiver appointed for McDonald's business. Upon that day he obtained an order for McDonald to appear in the circuit court August 9, 1928, and show cause why a receiver should not be appointed; the order directed that in the meantime McDonald should be enjoined from disposing of any of the property. The record does not show whether this order was served upon McDonald, but August 9, 1928, one D. H. Kienow was appointed receiver. The evidence shows that on either August 9th or 10th Kienow visited the premises, but is silent as to when he subscribed to the oath and furnished the bond required by § 1109, Or. L., "before entering upon his duties." Baer testified that the receiver did not take charge of the business until August 13th or 14th. The testimony of Miss Bodding indicates that the receiver was not in charge when the sale was made. The above is the only evidence which in any manner indicates when the receiver went into possession.

When the defendant's note for $150 became due she was unaware of the receivership and of the plaintiff's alleged interest in the car. Upon that day she called at the establishment and was directed to the Citizen's bank where the note had been placed for collection; she there paid the amount due upon it, which was delivered by the bank to the receiver; McDonald had previously remitted to the same individual the $606.

The foregoing we believe is a fair resume of the testimony. The verdict and judgment of the circuit court were in favor of the defendant.

The plaintiff complains because the circuit court denied his motion for a directed verdict. Section 8188, Or. L., which is section 25 of the Uniform Sales Act, provides thus:

"Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof; to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same."

When the above act is applied to the foregoing facts, which it will be observed are practically free from dispute, it seems clear that the court committed no error in denying the plaintiff's motion. We deem it unnecessary to cite further authority.

■ The only other matter argued in the appellant's brief concerns the receivership. The plaintiff seems to believe that the testimony warrants the conclusion that the receiver was in charge of McDonald's assets when the defendant purchased this car, and that therefore somehow the plaintiff's rights were invaded. This contention is unsound because there is no testimony which would warrant a conclusion that before the purchase was made the receiver had qualified under the provisions of section 1109, Or. L., and had assumed charge of the place of business.

It follows from the above that in our opinion the circuit court committed no error and hence its judgment will be affirmed.

CoSHOW, C. J., BELT and RAND, JJ., concur.